**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| JOHN H. PALMONT | * | |
| *Plaintiff,* | * | |
| | * | **Case No.: 19-cv-0568-PWG** |
| v. | * | |
| CORPORAL S. WRIGHT, *et al.* | * | |
| | * | |
| *Defendants.* | * | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Mr. John Palmont, a former inmate at Montgomery County Correctional Facility ("MCCF"), filed this suit against Corporal S. Wright and Montgomery County, Maryland, alleging a deprivation of rights under 42 U.S.C. § 1983 as well as Articles 16, 24, and 25 of the Maryland Declaration of Rights. Compl. ¶¶ 30, 36 (ECF No. 1). In Count I, Mr. Palmont brings a claim under § 1983 for excessive force in violation of the Eighth Amendment against defendant Cpl. Wright only. *Id.* ¶¶ 24–30. In Count II, Mr. Palmont alleges violations of Articles 16, 24, and 25 of the Maryland Declaration of Rights for the same excessive force against Cpl. Wright and, using a *respondeat superior* theory of liability, against Montgomery County. *Id.* ¶¶ 31–37. The defendants move for summary judgment on both counts based on several theories. The arguments have been fully briefed, ECF Nos. 24, 25, 26, and a hearing is not necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, the Court **DENIES** the defendants' motion.

1

**Factual Background**

*Plaintiff's Factual Allegations*

In his Complaint and summary judgment materials, Mr. Palmont claims that Cpl. Wright used excessive force against him on March 3, 2016 while he was an inmate at MCCF. Mr. Palmont asserts that the incident was the culmination of a disagreement between him and Cpl. Wright earlier in the day. As he summarized in his deposition:

> [Cpl. Wright] tried to put some guy in my cell who I knew I wasn't going to get along . . . So I remember just like letting him know like, yeah, I'm not letting him come in my cell, because you have to physically cuff up for the correctional officer to open the door. So I wouldn't cuff up. I said, "Look I'm not letting him come in my cell, you put somebody else in here. I don't care who it is, but I can't let you put him in my cell. I'm going to have to go to another cell, or something, so I'm not going to cuff up." But that was it, and I remember he was quite, quite like upset about it, Mr. Wright[.] So . . . he was like talking very vulgarly to me for that incident and that was it.

Pl.'s Dep. 29–30 (ECF No. 25-1). Later that same day, Mr. Palmont alleges that Cpl. Wright was transporting him to his cell in the disciplinary unit when Cpl. Wright began "pushing" Mr. Palmont. Pl.'s Opp'n 5 (ECF No. 25). When Mr. Palmont asked Cpl. Wright why he was pushing him, Cpl. Wright then "roughly twisted and pulled [Mr. Palmont]'s arms even though [Mr. Palmont] was handcuffed behind his back." *Id.* at 6. Mr. Palmont then "looked over his shoulder because of the pain" that Cpl. Wright was causing. *Id.* at 7. After Mr. Palmont turned, Cpl. Wright threw Mr. Palmont to the ground and placed his knee on Mr. Palmont's back. According to Mr. Palmont, as Cpl. Wright "slammed" him to the ground, Cpl. Wright said "How do you like this?" *Id.* at 9. After the "take down," Cpl. Wright ground "his knee onto [Mr. Palmont]'s head, back and neck." *Id.* at 10. As a result, Mr. Palmont suffered substantial injuries and enduring pain, and spent nearly a week in MCCF's medical unit. *Id.* at 11; Pl.'s Dep. 60.

*The Defendants' Factual Assertions*

The defendants paint a very different picture of what happened. According to them, Mr. Palmont initiated the incident after disobeying a direct order given by Cpl. Wright. The defendants state Mr. Palmont then cursed at Cpl. Wright and turned towards him. Defs.' Mot. 5 (ECF No. 24). Believing that Mr. Palmont was going to assault him, Cpl. Wright applied reasonable force to take Mr. Palmont to the floor in order to protect himself. *Id.*

I have viewed and considered a video recording submitted by both parties in support of their claims. Ex. D to Defs.' Mot., ECF No. 24-5; Ex. 4 to Pl.'s Opp'n, ECF No 25-4. The parties proffer different accounts of the facts surrounding the moment that Mr. Palmont turned towards Cpl. Wright. As explained below, I must view the facts in the light most favorable to the non-moving party, Mr. Palmont.

Additionally, the defendants acknowledge Mr. Palmont has presented medical testimony "that he sustained a back injury," but do not concede that Mr. Palmont was injured to the extent that he claims. Defs.' Mot. 11.

**Standard of Review**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 n.10 (1986). The existence of only a ''scintilla of evidence'' is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## Discussion

The defendants move for summary judgment based on several theories:[1] first, that the Fourteenth Amendment does not apply to an excessive force claim brought by a convicted inmate (and the parallel Article 24 claim fails because Article 24 is construed *in pari mateira* with the Fourteenth Amendment, such that an Article 24 claim will fail if a Fourteenth Amendment claim fails); second, Cpl. Wright did not use excessive force against Mr. Palmont, undermining the § 1983 claim alleging an Eighth Amendment violation; third, Cpl. Wright is entitled to qualified immunity; fourth, Mr. Palmont's excessive force claim under Articles 16 and 25 of the Maryland Declaration of Rights fails for the same reasons that the § 1983 claim fails; fifth, to the extent that Mr. Palmont's claim against Cpl. Wright is alleged against him in his "official capacity," Cpl. Wright is entitled to summary judgment because official capacity claims can only be made against the County; and finally, that Montgomery County is entitled to summary judgment on the § 1983 claim because Mr. Palmont failed to allege that the County's "policy, custom, or practice" proximately caused the constitutional violation. Defs.' Mot. 6.

---

[1]     Although Mr. Palmont's complaint straightforwardly alleges a § 1983 claim against Cpl. Wright only, Count I, and violations of Articles 16, 24, and 25 of the Maryland Declaration of Rights against Cpl. Wright and Montgomery County, Count II, the County conjures up a § 1983 claim against it that Mr. Palmont never pleaded, and does not assert, and asks the Court to dismiss it. But, because no § 1983 claim was brought against the County, there is nothing for the Court to rule on in this respect.

The following three defenses asserted by the Defendants are easily resolved: The Fourteenth Amendment and parallel Article 24 defense; the official capacity defense; and the defense to a § 1983 claim against the County.

As to the Fourteenth Amendment argument, it is not clear to the Court that Mr. Palmont pleaded a Fourteenth Amendment claim in his complaint against either defendant. To the extent that Mr. Palmont alleges a Fourteenth Amendment claim, such a claim is inapplicable to the present case. The Supreme Court has held that the primary vehicle for a post-conviction detainee, such as Mr. Palmont (Joint Addend., ECF No. 31), to bring excessive force claims is the Eighth Amendment, not the Fourteenth. *Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("The Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases such as this one, where the deliberate use of force is challenged as excessive and unjustified."). Furthermore, Mr. Palmont concedes that Article 24 of the Maryland Declaration of Rights, which is in *pari materia* with the Fourteenth Amendment, does not apply to a convicted inmate "such as the Plaintiff." Pl.'s Opp'n 21 n.9; *Doe v. Dep't of Pub. Safety and Corr.*, 185 Md. App. 625, 636 (2009) ("Article 24 . . . is *in pari materia* with Due Process Clause of the Fourteenth Amendment."). Since the Fourteenth Amendment is inapplicable to excessive force cases involving a post-conviction inmate, the motion as to the Fourteenth Amendment is denied as moot, as is the motion regarding Article 24 of the Maryland Declaration of Rights, due to Mr. Palmont's concession that Article 24 does not apply to the conduct at issue here. The rubric under which Mr. Palmont's excessive force claims must be analyzed is the Eighth Amendment.

Regarding the official capacity defense as to Cpl. Wright, Mr. Palmont makes clear that the Complaint contains no such official capacity claim against him. Pl.'s Opp'n 21 ("No such

'official capacity' claim is raised in the Complaint and the Defendants are not entitled to relief from a non-existent claim."). I agree. Accordingly, I deny as moot the Cpl. Wright's motion as to any official capacity defense. If his liability is established, it will be in his individual capacity only.

I will also quickly resolve the County's motion for summary judgment as to any § 1983 claim against it pursuant to *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978). Defs.' Mot. 5. Montgomery County seeks summary judgment as to Count I. But Count I is not alleged against the County. Pl.'s Opp'n at 22 ("Count I is brought only against Defendant Wright as shown by the heading of the Count."). Accordingly, I deny as moot the County's motion as to any perceived § 1983 claim against it.

Going forward, the claims against Cpl. Wright will be limited to those alleged against him in his individual capacity. What I must now decide are the excessive force and qualified immunity defenses as to Cpl. Wright only, and the defenses regarding the Maryland Declaration of Rights as to both defendants, all of which are discussed in turn below.

## I.   Excessive Force

Mr. Palmont alleges that Cpl. Wright used excessive force against him in violation of the Eighth Amendment's "cruel and unusual punishment" clause.[2] An inmate's Eighth Amendment excessive force claim is analyzed under an objective and subjective component. The objective prong asks, "whether the force applied was sufficiently serious to establish a cause of action." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). This is not a high bar, as any force more

---

[2]    The Eighth Amendment's probation on cruel and unusual punishment applies only to inmates who are serving a post-conviction sentence. *Haskins v. Hawk*, No. ELH-11-2000, 2013 WL 1314194, at *25 (D. Md. Mar. 29, 2013) ("[B]ecause plaintiff is a convicted prisoner, his claim of excessive force arises solely under the Eighth Amendment."). At the time of the complained-about incident, Mr. Palmont was serving a one-year sentence, with 88 days suspended, for a conviction of driving on a suspended license. Joint Addend.

than "*de minimis*" force will suffice. *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 10 (1992)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (per curiam) (describing *de minimis* force as a "nontrivial" amount of force). The requisite force is clearly present here. Indeed, as the video recording of the incident graphically confirms, it is undisputed that Cpl. Wright "applied force to take [Mr. Palmont] to the floor." Defs.' Mot. 5.

The case hinges on the second component, which asks whether the official acted "with a sufficiently culpable state of mind." *Brooks*, 924 F.3d at 112 (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). An official's state of mind is evaluated under a subjective standard and turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Hudson*, 503 U.S. at 7).

When evaluating an official's state of mind, the Court considers a number of relevant factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response.

*Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). In accordance with the summary judgment standard, when evaluating the factors, I will draw inferences and view the facts in the light most favorable of the non-moving party, Mr. Palmont. Although a "scintilla of evidence" is not enough to overcome a motion for summary judgment, Mr. Palmont's factual assertions are sufficiently supported by the record to lead me to conclude that a reasonable jury could find for him. I will now address each factor in turn.

First, Cpl. Wright maintains that the application of force was necessary because Mr. Palmont disobeyed a direct order and Cpl. Wright "reasonably believed that [Mr. Palmont] was

about to assault him." Defs.' Mot. 10. Mr. Palmont disputes both assertions. Mr. Palmont states that Cpl. Wright gave no orders and that he only turned his body in reaction to Cpl. Wright's "painful twisting of the [Mr. Palmont]'s arm." Pl.'s Opp'n 16. After drawing inferences in favor of the Plaintiff, this factor weighs against granting summary judgment, because there are genuine disputes of material fact that must be resolved. According to Mr. Palmont, his turning towards Cpl. Wright was an involuntary reaction to Cpl. Wright's twisting of his arm, causing him pain. Having reviewed the video, I agree that a reasonable fact finder could credit Mr. Palmont's version of the event. Thus, there is a triable issue regarding the need for Cpl. Wright's application of force.

Similarly, the second factor weighs against granting the motion. The video shows the defendant, arms handcuffed behind his back, being escorted through a closed door into another room in the detention facility. Cpl. Wright is holding his arms and pulling him in a circular motion, spinning him around and down to the ground. Plaintiff, who was off balance and standing on one leg, was brought to the ground with such speed and force that one of his shoes can be seen flying off his foot and across the room. Cpl. Wright can then be seen kneeling on Mr. Palmont's back as another correctional officer enters into view to assist Cpl. Wright. A reasonable jury, viewing the video and hearing Mr. Palmont's versions of the events, could conclude that there was no need for Cpl. Wright to exert force, and/or that there was insufficient need for the amount and type of force he used, even if some degree of force was appropriate.

The third factor asks whether there was any reasonably perceived threat to Cpl. Wright that the application of force sought to quell. Again, viewing the facts in the light most favorable to the plaintiff, a reasonable juror could credit Mr. Palmont's explanation that he presented no threat for which Cpl. Wright needed to exert force to quell. Pl.'s Opp'n 8.

The final factor considers any efforts made to temper the severity of a forceful response. Based on the video depiction of the speed and force with which Cpl. Wright spun the Plaintiff around and down onto the concrete floor (sufficient for his shoe to be launched off of his foot and across the room), followed by kneeling on the back of the prostrate Mr. Palmont, a reasonable jury could find that Cpl. Wright made no effort to temper the severity of the force that he exerted. Pl.'s Opp'n 17–18. Therefore, the fourth factor also weighs against granting summary judgment.

To support his argument that the force here was reasonable, Cpl. Wright's cites to three cases. In *Steele v. Robinson*, the court granted summary judgment for the defendants, concluding that the plaintiff had failed to raise a genuine dispute of fact as to whether the defendant has used excessive force. *Steele v. Robinson,* 15-cv-252-FDW, 2017 WL 4102478, at *5 (W.D.N.C. Sept. 15, 2017). However, in that case, before the plaintiff was taken to the ground by the defendant, the plaintiff "was *clearly* struggling with the officers as he was being escorted." *Id.* (emphasis added). Here, the video only supports a conclusion that Cpl. Wright took down Mr. Palmont; what led up to the incident is not depicted in the video and is disputed in other parts of the record. Pl.'s Dep. 35–36; Def. Wright's Dep. 22–27, 31–32; Ex. 5 to Pl.'s Opp'n 9 (McCann Report) (concluding Mr. Palmont did not present a threat of immediate death or serious injury preceding the takedown). While Mr. Palmont concedes that he and Cpl. Wright exchanged words, Mr. Palmont's account of the incident is that the verbal altercation ended long before Cpl. Wright took him down, and Mr. Palmont denies any provocation of Cpl. Wright. Conversely, Cpl. Wright claims that Mr. Palmont charged at him. Based on the conflicting information in the record, I cannot conclude that Mr. Palmont was clearly struggling with Cpl. Wright, and thus *Steele* is distinguishable.

In *Simmons v. Sharpe*, the court held that prison officials were entitled to summary judgment in a case arising from an incident in which a disobedient handcuffed inmate was taken

9

to the floor and held there. *Simmons v. Sharpe,* 5:10-cv-37-RJC, 2012 WL 4499045, at *5 (W.D.N.C. Sept. 28, 2012). The plaintiff in *Simmons* disputed the defendants' recitation of the facts and argued that a genuine dispute as to material fact existed. *Id.* at *6. But the court concluded that many of the plaintiff's contentions were "not supported by the objective evidence of Plaintiff's minimal injury." *Id.* Moreover, the court found that there was additional "overwhelming evidence of record" that the plaintiff was "resisting and being disobedient." *Id.* Conversely, in the present case, no such overwhelming evidence exists to disprove Mr. Palmont's assertions. Neither were Mr. Palmont's injuries minor—they required a multi-day stay in a medical facility. Thus, *Simmons* provides no succor to Cpl. Wright.

Similar to *Steele* and *Simmons*, the plaintiff in *Wood v. Rubenstein*, also cited by Cpl. Wright, lacked proof to overcome the available evidence that showed the officers' good faith use of appropriate force. *Wood v. Rubenstein,* No. 5:12-cv-174, 2014 WL 6977624, at *6 (N.D.W.V. Dec. 9, 2014). "The plaintiff fails to proffer any footage or witnesses that demonstrate facts to the contrary or that the force used was excessive." *Id.* Here, not only is there video evidence that a reasonable jury could find supports the Plaintiff's version of events, but Cpl. Wright has not presented undisputed evidence that would show that the use of force was justified, or the amount of force used was appropriate.

Moreover, I must acknowledge the challenge that a plaintiff faces in proving an official's subjective state of mind and recognize that a plaintiff may prove malicious intent through indirect evidence that would lead a jury to "infer the existence of the subjective state of mind" when drawing on the *Whitley* factors. *Brooks*, 924 F.3d at 116 (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Ultimately, it is up to the jury to draw the "proper inferences" from the *Whitely* factors. *Id.* At the summary judgment stage, the Court must only decide whether a genuine dispute

of material fact exists, and whether a defendant is entitled to judgment as a matter of law. Regarding the alleged use of excessive force, I conclude that based on the facts viewed in the light most favorable to Mr. Palmont, Cpl. Wright has failed to show that there are no genuine disputes of material fact, precluding me from granting summary judgment as a matter of law.

## II.   Qualified Immunity

Defendant Cpl. Wright argues that even if he used excessive force, he is nevertheless entitled to qualified immunity. Qualified immunity provides government officials with a shield from liability for civil damages so long as the conduct at issue was a discretionary function, and insofar as the conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hicks v. Ferreyra*, 396 F. Supp. 3d 564, 574 (D. Md. 2019) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)) *aff'd*, 965 F.3d 302 (4th Cir. 2020). Qualified immunity is therefore available to officers or agents who "act in objectively reasonable reliance on existing law." *Id.* (quoting *Queen v. Prince George's Cnty.*, 188 F. Supp. 3d 535, 541 (D. Md. 2016)).

Whether the lawsuit includes a *Bivens* action or a § 1983 claim, courts apply the same qualified immunity analysis by "balanc[ing] two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "In particular . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Id.* (quoting *Gomez v. Atkins*, 296 F.3d 253, 261 (4th Cir. 2002)).

A government official is entitled to qualified immunity unless: "(1) the allegations, if true, substantiate a violation of a federal statutory or constitutional right and (2) the right was 'clearly established' such that a reasonable person would have known his acts or omissions violated that right." *Id.* (quoting *Streater v. Wilson*, 565 Fed. App'x 208, 210 (4th Cir. 2014)). The defendant carries the burden of proving qualified immunity. *Id.* at 575.

The issue for the Court then is whether Cpl. Wright violated Mr. Palmont's clearly established Eighth Amendment rights by forcefully throwing him to the ground and applying pressure to his head, neck, and back, causing Mr. Palmont's injuries. Cpl. Wright argues that he is entitled to qualified immunity because it was "objectively reasonable . . . to believe that his action would not violate [Mr. Palmont]'s right to be free from use of excessive force," and that Mr. Palmont "created the circumstance that necessitated Cpl. Wright to respond with force." Defs.' Mot. 18. Again, viewing the facts in the light most favorable to the nonmoving party, it was Cpl. Wright's initial twisting of Mr. Palmont's handcuffed arms that caused Mr. Palmont to turn as a natural reaction to the pain. Because the video does not establish either way who initiated the altercation, and Mr. Palmont and Cpl. Wight's explanations are in dispute, it should be left to the jury to decide the reasonableness of Cpl. Wright's conduct. On this record, a jury could reasonably find that Cpl. Wright was the instigator and that the use of force was excessive, due, in part, to the seriousness of the injury Mr. Palmont suffered, making Cpl. Wright's conduct objectively unreasonable.

The second prong asks whether the violated right is "clearly established" such that a reasonable person would have known his acts violated the right. Under this prong, a government official's conduct violates clearly established law if, "at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that

what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (internal quotation marks omitted) (internal alterations omitted). While a direct case-on-point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

The inquiry then is whether the "state of law at the time of alleged conduct gave fair warning that the officer's alleged treatment of the prisoner was unconstitutional." *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 98 (4th Cir. 2017) (quoting *Hope*, 536 U.S. at 741) (alterations omitted). In the present case, viewing the facts in the light most favorable to Mr. Palmont, the Court finds that Cpl. Wright had fair warning that the alleged conduct was unconstitutional. It is well established Supreme Court precedent that the Eighth Amendment prohibits excessive use of force against convicted inmates: "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified." *Whitley*, 475 U.S. 312, 327 (1986); *accord Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Thompson*, 878 F.3d at 103; *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). Therefore, the relevant precedent put Cpl. Wright on notice that the alleged conduct would violate Mr. Palmont's right to be free from excessive use of force. Cpl. Wright thus is not entitled to qualified immunity.

### III.   Claims Under the Maryland Declaration of Rights

Mr. Palmont also alleges both Cpl. Wright and Montgomery County violated his rights guaranteed under Articles 16 and 25 of the Maryland Constitution's Declaration of Rights. These claims arise from the same facts discussed above. Because Articles 16 and 25 are the Maryland Constitution's analogues to the Eighth Amendment, these claims are analyzed under the same

standard as the Eighth Amendment framework articulated above. *DiPino v. Davis*, 354 Md. 18, 43–44 (1999); *see also Torbit v. Baltimore City Police Department*, 231 Md. App. 573, 590 (2017) ("Maryland courts have historically treated [Articles 16 and 25] as providing the same protection as the Eighth Amendment to the United States Constitution."). Accordingly, Cpl. Wright is not entitled to summary judgment on the Maryland constitutional claims for the same reasons I denied his summary judgment motion as to excessive force under the Eighth Amendment. *Taylor v. Somerset Cty. Comm'rs*, No. RDB 16-0336, 2016 WL 3906641 at *6 n.5 (D. Md. July 19, 2016) (Denying motion to dismiss as to plaintiff's Article 25 claim for substantially the same reasons as the court's denial of the same motion as to Eighth Amendment claim).

Nor is Montgomery County, because the County's liability hinges on whether or not Cpl. Wright himself is liable. Montgomery County is a local government entity. *See Woodbury v. Stepping Stones Shelter, Inc*., No. PWG-17-1674, 2018 WL 3122457 at *6 (D. Md. June 25, 2018) (observing that Montgomery County is amenable to a § 1983 suit if brought as a *Monell* claim, which proceeds against municipalities such as the County) (quoting *Horn v. Maryland*, No. PWG-17-3633, 2018 WL 704851, at *2 (D. Md. Feb. 2 2018)). While local governments do not have *respondeat superior* liability under § 1983, Maryland law is clear that local government entities may incur "*respondeat superior* liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment." *DiPino*, 354 Md. 18 at 44, 51–52. Under *respondeat superior*, if Cpl. Wright committed a violation of Mr. Palmont's rights under the Maryland Constitution, Montgomery County may be held liable for Cpl. Wright's conduct. Because I find that the issue of whether Cpl. Wright committed such a violation must proceed to the jury, so too must the issue of whether Montgomery County is liable

for violating Mr. Palmont's rights under Articles 16 and 25. Therefore, the County's motion for summary judgment regarding its liability under a *respondeat superior* theory also must be denied.

**Conclusion**

For the reasons stated, the Defendants' motion for summary judgment is denied, and I will schedule further proceedings. A separate order follows.

DATED this <u>1st</u> day of <u>December</u> 2020.

                                      BY THE COURT:

                                      _____/S/_____

                                      Paul W. Grimm
                                      United States District Judge